## SILVERMAN v. FEDERAL TRADE COMMISSION.

### No. 10663.

Circuit Court of Appeals, Ninth Circuit.

Nov. 13, 1944.

Seaman & Jackson, of San Francisco, Cal., for petitioners.

W. T. Kelley, Chief Counsel, F. T. C., Joseph J. Smith, Jr., Asst. Chief Counsel, and Jno. W. Carter, Jr., Sp. Atty., F. T. C., all of Washington, D. C., for respondent.

Before WILBUR, DENMAN, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

Petitioner seeks a review of the Federal Trade Commission's orders to cease and desist from the use in interstate commerce of "unfair or deceptive acts or practices" prohibited by 15 U.S.C.A. § 45(a) (b) (c), in a scheme to enable creditors to locate debtors. The facts as stated in the Commission's brief are supported by the record and are hereby repeated.

Petitioner is an individual having his principal office in San Francisco and trading as J. Silverman & Associates, General Forwarding System and Commercial Pen Company. He is engaged in the business of selling and distributing in interstate commerce post cards designed and intended for use by creditors and collection agencies in obtaining by subterfuge information concerning debtors. Petitioner characterizes his business in advertisements to prospective customers as "Locations by Subterfuge," "a new and unique method of locating 'skips'" by "a cleverly-planned means of reaching these 'debt-evaders' in so subtle a manner that they do not know they are being traced," and the information which petitioner endeavors to obtain for his customers is the address, and the name of the employer, the bank and a friend, of their delinquent debtors.

Petitioner's "system," as he calls it, of obtaining such information consists of the use of one or more of three post cards, two sold and distributed under the name General Forwarding System and one under the name Commercial Pen Company. The cards are the type commonly referred to as "double post cards." One part of the card is addressed to and contains a message for the debtor. The other, or "reply," part is addressed to petitioner under one of his trade names and is intended to be detached, filled out, and mailed by the debtor. Some of the General Forwarding System cards are addressed to a friend or relative of the debtor, rather than to the debtor himself, and the attached reply cards in such

cases are intended to be filled out and mailed by such friend or relative.

The cards are sold and shipped by petitioner to some 1,800 merchants and collection agencies "throughout the United States" who address them to debtors or others, attach the required postage to both parts of the cards, and return them in bulk to petitioner. Petitioner then mails the individual cards, and upon his receipt of the reply cards filled out by the addressees, petitioner sends them to his customers, whom he identifies by means of code numbers stamped on the cards.

For the purpose of "eliminating any suspicion" on the part of the debtors and to prevent them from knowing that the cards "emanate" from their creditors, petitioner mails the cards from San Francisco, and the names of creditors or other purchasers of the cards do not appear on them.

The General Forwarding System cards addressed to debtors read as follows:

### "FINAL NOTICE

"We have on hand a PREPAID package for party whose name appears on reverse side of this card.

"Due to change or error of address and lack of identification, we cannot make delivery.

"We will hold same at your risk, subject to your forwarding directions, and FULL and PROPER identification as indicated.

---

GENERAL FORWARDING SYSTEM
821 Market Street

San Francisco, Calif.

---

No Postage required on the attached Reply Card. Please answer Promptly

Always refer to Package reference number when correspondent."

Attached to this is the following reply card addressed to General Forwarding System, 821 Market Street, San Francisco, Calif.:

"MAIL THIS CARD TO US PROMPTLY

GENERAL FORWARDING SYSTEM
San Francisco, Calif.

| Package Reference Number 10073 | Checked By..................... Charges ........ NONE Dept. ........... UNCLAIMED |
|---|---|

Please send package (Fully Prepaid, with NO CHARGES) to me. My address and correct identification is as follows:

Consignee must be Identified
Fill in All Spaces Below

OR PACKAGE WILL NOT BE DELIVERED

Deliver the Above Package to
NAME ..........................................
ADDRESS ......................................
CITY ........................STATE ............

For Identification I Refer you to My
Employer and Bank and Friend
BANK ..........................................
ADDRESS ......................................
PRESENT
EMPLOYER ...................................
ADDRESS ......................................
FRIEND ........................................
ADDRESS ......................................

NO POSTAGE OR ADDRESSING NECESSARY"

The Commercial Pen Company cards read as follows:

"TO INTRODUCE
OUR PENS

We will mail you one of them ABSOLUTELY FREE OF CHARGE provided you will show it to your friends and fellow employees where you work.

In order to avoid duplication, name of employer must be given.

You must act promptly, as only a limited number of pens will be distributed in this manner. Yours will be sent as soon as this request card is returned."

Attached to this is the following reply card addressed to "Commercial Pen Company, 866 Pacific Building, San Francisco, Calif.":

"FREE COUPON          No. AB1572X

This certifies that ...............................

is entitled to one pen FREE OF CHARGE AND WITHOUT ANY OBLIGATION when filled and returned to the Commercial Pen Co., San Francisco, California.

| NAME | ADDRESS |
|---|---|
| CITY | . STATE |
| EMPLOYED BY DEPT ADDRESS | |
| Coupon Expires after | This Coupon |
| 30 days | is Not Transferable." |

On the basis of these facts the Commission concluded that petitioner had violated the Federal Trade Commission Act and ordered him, in connection with the sale

and distribution in interstate commerce of "cards designed for use in obtaining information concerning debtors," to cease and desist.

(1) Using the name "General Forwarding System," or any other name of similar import, to designate, describe, or refer to [petitioner's] business; or otherwise representing, directly or by implication, that [petitioner] is connected in any way with the movement or transportation of goods or shipments, or with the delivery of goods or shipments to the consignees thereof.

(2) Representing, directly or by implication, that persons concerning whom information is sought through [petitioner's] post cards or other material are, or may be, consignees of goods or packages in the hands [of petitioner], or that the information sought through such means is for the purpose of enabling [petitioner] to make delivery of goods or packages to such persons.

(3) Using the name "Commercial Pen Co.," or any other name of similar import, to designate, describe, or refer to [petitioner's] business; or otherwise representing, directly or by implication, that [petitioner] is engaged in the business of selling or distributing pens or other merchandise.

(4) Using, or supplying to others for use, post cards or other material which represents, directly or by implication, that such cards or other material are for the purpose of introducing pens or any other merchandise to the public.

(5) Using, or supplying to others for use, post cards or other material which represents, directly or by implication, that [petitioner's] business is other than that of obtaining information for use in the collection of debts, or that the information sought through such cards or other material is for any purpose other than for use in the collection of debts.

■ These facts so clearly warrant the inferences of unfairness and deceptive practices upon which the five sections of the cease and desist order are based, that the petition for review well could be dismissed as frivolous.

Petitioner had no "Prepaid package" on hand in his "General Forwarding System" of which he "cannot make delivery" for any reason, much less because of "change or error of address and lack of identification." Petitioner admitted he had no specific package which he was holding for anyone.

There was no "Commercial Pen Company" which was seeking "To Introduce Our Pens" to anyone as that phrase would be and was intended to be understood. Petitioner admitted he had nothing more than a "stock of pen points" (meaning pen points and not assembled stocks and pen points) which he kept "for the purpose of being able to send something" to the persons named on the reply cards, and until he received the reply cards he did not even know the name of any person to whom he was to send a "package."

Petitioner's scheme is a cheap swindle, and the argument that it is less so because it may in certain cases trap swindling debtors is not one pleasing to entertain.

Nor is there any support for petitioner's contention that it is not a matter of the Commission's concern because the swindled person suffers no pecuniary damage. Federal Trade Commission v. Algoma Lumber Co., 291 U.S. 67, 78, 54 S.Ct. 315, 78 L.Ed. 655.

■ Nor is there any merit in petitioner's contention that it is not to the public interest to prevent the perversion of interstate commerce with such swindling. As stated by the Supreme Court in Federal Trade Commission v. R. F. Keppel & Brother, 291 U.S. 304, 308, 54 S.Ct. 423, 425, 78 L.Ed. 814, "Upon the record it is not open to question that the practice complained of is a method of competition in interstate commerce and that it is successful in diverting trade from competitors who do not employ it. If the practice is unfair within the meaning of the Act, it is equally clear that the present proceeding, aimed at suppressing it, is brought, as section 5 of the act [15 U.S.C.A. § 45] requires, 'in the interest of the public.'"

The cease and desist order is sustained and the petition to set it aside is denied.

Affirmed.