## ROTHSCHILD v. FEDERAL TRADE COMMISSION.

### No. 10630.

United States Court of Appeals
Seventh Circuit.

Nov. 20, 1952.

---

40

Samuel E. Hirsch, Chicago, Ill., for petitioner.

W. T. Kelley, Gen. Counsel, Robert B. Dawkins, Asst. Gen. Counsel, Donovan Divet, Atty., Federal Trade Commission, Washington, D. C., for respondent.

Before MAJOR, Chief Judge, and DUFFY and LINDLEY, Circuit judges.

DUFFY, Circuit Judge.

This is a petition to review a cease and desist order of the Federal Trade Commission. The amended complaint charged petitioner with unfair and deceptive acts and practices in commerce, in violation of the Federal Trade Commission Act.[1]

Petitioner's principal place of business is at Chicago, Illinois, and he operates under the trade names of Gen-O-Pak Company, American Deposit System, and Manpower Classification Bureau. Under each trade name petitioner sells services and literature intended to be used in locating delinquent debtors.

Operating as the Gen-O-Pak Company, petitioner sells two forms of double postcards carrying printed messages of which he is the author. Sales of these cards are made throughout the United States to firms and persons desiring to locate their delinquent debtors. One half of one of the double postcard forms reads as follows:-

"Office of the Gen-O-Pak Co.
"139 North Clark Bldg.,
"Chicago 2, Illinois

"Dear Friend:

"We have on hand a package, which we will send to you if you will *completely* fill out the return card, giving sufficient identification to warrant our sending this package to you. We will hold same at your risk subject to your forwarding directions for thirty days and the complete information requested. There are *no* charges whatsoever

1. Sec. 5(a): "Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are declared unlawful.

"The Commission is empowered and directed to prevent persons, partnerships, or corporations * * * from using unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce." 52 Stat. 111–112, 15 U.S. C.A. § 45(a).

and the package will be sent to you all charges *prepaid.*

"Yours very truly,
"The Gen-O-Pak Co."

The return card attached to the above card contains a questionnaire. Among other questions asked of the person addressed is the name of his bank, his employer, and the name of a friend.

Petitioner's customers receive bundles of such cards from petitioner and address them to their respective debtors at their last known address, and then return the cards to petitioner who mails them to the debtors as addressed. Petitioner sends to his customers any reply cards received giving information concerning their debtors, and also mails to each replying debtor a packet containing three pen points having a retail value of 6¢. Petitioner testified the packet of pens thus sent is the package referred to on the postcards addressed to the debtors. In 1950 petitioner sold 44,253 of such cards at a price of 15¢ a set. The charge of 15¢ includes the cost of the cards, the cost of the pens, and covered petitioner's service.

The second form of double postcards which petitioner uses while trading as Gen-O-Pak Company also is addressed by petitioner's csutomers. These cards are mailed to persons other than the debtor, and represent that Gen-O-Pak Company has on hand a package which it wishes to deliver to the debtor. The reply card asks for debtor's address and other information which would be valuable in making collections. When information is obtained by petitioner, it is sent on to his customers. The petitioner then sends a packet containing three pen points to the person answering the inquiry. The average charge for this type of double card is 11¢. In 1950 petitioner sold $8,510 worth of this type of card.

The Commission found that by use of such cards petitioner falsely represented, and placed in the hands of his customers a means of falsely representing, directly or by implication, to customers' debtors, and to others from whom information concerning debtors is sought, that such debtors are consignees of packages sent by others than petitioner and in the hands of petitioner in the usual course of his business; that the packages have been prepaid by the consignor and are held by petitioner only for forwarding purposes; that the packages are of substantial value, and that delivery cannot be made because of lack of identification or address. The Commission further found that such representations are false and misleading, that petitioner's business, so far as the recipients of the cards are concerned, has nothing to do with transportation of packages or their delivery to the proper consignees; that petitioner's whole scheme is that of obtaining information by subterfuge, and that the cards have no substantial connection with the sale and distribution of other products sold by petitioner.

Trading under the name, Manpower Classification Bureau, at the same address, petitioner sells and distributes in interstate commerce form letters which are sent to debtors whose names and last known addresses have been furnished by customers. The average price of the complete set of such letters and service is 11¢. The Commission found that by use of such form letters and the name, Manpower Classification Bureau, petitioner falsely represented, and placed in the hands of his customers a means of falsely representing that petitioner is engaged in operating a labor classification bureau for the purpose of obtaining information as to the manpower or employment situation, whereas petitioner's only purpose is to obtain information concerning delinquent debtors by subterfuge.

Petitioner also sells in interstate commerce a form letter designated, "The American Deposit System Type C Information Letter." The average price is 15¢. In 1950 petitioner sold 28,486 of these forms. The customers address the envelopes and petitioner mails them. The form letter states, "We will forward to you a small sum of money deposited with us, for you," if the debtor will give the information requested. The information asked is of a kind useful in collecting debts. When information is given, petitioner sends three pennies to the person furnishing the information. The Commission found that the

42

petitioner was not in fact named as a depositary of a sum of money, and was not engaged in a fiduciary capacity or otherwise in receiving money to be delivered to debtors or others.

The Commission found generally that the statements and representations contained in the postcards and the form letters sold and distributed by petitioner, as well as by his use of the trade names, "Manpower Classification Bureau" and "American Deposit System," clearly have the tendency to mislead and deceive the recipients of such postcards and letters.

Petitioner is a member of a collectors' organization and as such subscribes to and advertises in a collectors' magazine, which is sent to collection agencies throughout the United States, and has the largest circulation of any magazine published in that field. Petitioner advertises under his various trade names. It is obvious from his advertising that all of petitioner's postcards, and letters, under whatever trade name sold, are sold for no other purpose than to aid in making collections from delinquent debtors.

The Commission ordered petitioner to cease and desist the use of the postcards and letters hereinbefore described unless the words, "Collection Service," appear in conjunction with the trade name used. On this petition for review, petitioner claims the Commission was without jurisdiction to issue the order because he says he was not engaged in interstate commerce. He also contends that unfair competition[2] or deception on his part was not proved.

█ As to the question of interstate commerce, petitioner states, "Nothing passes between the States except a postcard or letter, and the mere forwarding of a request for information through the mail does not constitute commerce within the meaning of the Act." However, petitioner's services go beyond the mailing of a request for information. The entire transaction as hereinbefore described must be considered as a whole. It is clear that petitioner, on the dates specified in the com-

plaint, was engaged in "commerce" as that term is defined in the Act.

Furthermore, the Commission is not deprived of jurisdiction because the deception involved was perpetrated by using the mails. Progress Tailoring Co. v. Federal Trade Commission, 7 Cir., 153 F.2d 103, 105; Branch v. Federal Trade Commission, 7 Cir., 141 F.2d 31, 34.

█ Petitioner argues that the statements in his cards and letters are factually true and that it necessarily follows he did not engage in a deceptive act or practice. We do not agree. Words and sentences may be literally and technically true, and yet be framed in such a setting as to mislead or deceive. Bockenstette v. Federal Trade Commission, 10 Cir., 134 F.2d 369, 371; D. D. D. Corp. v. Federal Trade Commission, 7 Cir., 125 F.2d 679, 682. The petitioner intended the recipients of the cards and letters sold by him to draw inferences therefrom not based on fact. The information was requested not to enable petitioner to mail a package to debtor, but rather to entrap him. The Commission acted within its powers in requiring that if petitioner used the cards and letters in the operation of his business, same be worded and phrased, so as not to be misleading and deceptive.

██ It is not necessary that an unfair or deceptive act forbidden by the Trade Commission Act should cause a pecuniary loss. One of the purposes of the Act has been the protection of the public, and public interest may exist even though the practice deemed to be unfair does not violate any private right. Federal Trade Commission v. Klesner, 280 U.S. 19, 27, 50 S.Ct. 1, 74 L.Ed. 138; Gimbel Bros., Inc. v. Federal Trade Commission, 2 Cir., 116 F.2d 578, 579; Gulf Oil Corp. v. Federal Trade Commission, 5 Cir., 150 F.2d 106, 108. The fact that acts and methods deemed deceptive are used to trap delinquent debtors does not prevent such acts and methods from being against the public interest. Some of the debtors may have had a justifiable reason for not promptly paying their obligations. And a considerable number of persons who

2. Petitioner's statement of the propositions of law relied on, and the introductory paragraph of his argument both use the term, "unfair competition," apparently inadvertently, since unfair competition is not charged and is not an issue herein.

receive cards and letters from petitioner are not debtors.

A quite similar situation existed in Silverman v. Federal Trade Commission, 9 Cir., 145 F.2d 751. There the petitioner, operating as "General Forwarding System," sold double postcards to be used by creditors and collection agencies in obtaining information concerning debtors by subterfuge. There, as here, representations were made that the petitioner had a prepaid package for debtor which it could not deliver because of error of address or lack of identification. Another double card used represented that petitioner, operating as "Commercial Pen Company," wished to introduce its pens and would mail one free to debtor if he would supply the information requested. In that case the "pen" forwarded were pen points, as in the case at bar. The Commission entered a cease and desist order and the Court of Appeals affirmed, holding that the practice engaged in by petitioner was a "cheap swindle," which was not excused because it might in certain cases entrap swindling debtors. It was also held that it was not necessary to show that the swindled person suffered any pecuniary loss, the court citing Federal Trade Commission v. Algoma Lumber Co., 291 U.S. 67, 78, 54 S.Ct. 315, 78 L.Ed. 655.

The evidence sustains the findings of the Commission and the Commission acted within its powers. Therefore the petition to review and set side the Commission's order is denied, and the enforcement of the order of the Commission is ordered.