**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 8, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

FEDERAL TRADE COMMISSION,

      Plaintiff-Appellee,

v.

LOANPOINTE, LLC,
EASTBROOK, LLC, and
JOE S. STROM,

      Defendants-Appellants,

BENJAMIN J. LONSDALE,
JAMES C. ENDICOTT, and
MARK S. LOFGREN,

      Defendants.

No. 12-4006
(D.C. No. 2:10-CV-00225-DAK)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO** and **HOLMES**, Circuit Judges, and **BRIMMER**, District
Judge.[**]

---

[*]This order is not binding precedent except under the doctrines of law of the
case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**]The Honorable Philip A. Brimmer, U.S. District Judge, District of
Colorado, sitting by designation.

The Federal Trade Commission ("FTC") initiated this action against appellants alleging that their issuance and collection of short-term "payday" loans violated the Federal Trade Commission Act ("FTC Act"), *see* 15 U.S.C. § 45, and its regulations, *see* 16 C.F.R. § 444.2, as well as the Fair Debt Collection Practices Act ("FDCPA"), *see* 15 U.S.C. § 1692. Aplt. App'x at A736. The district court granted summary judgment in favor of the FTC, entered a permanent injunction against appellants, and ordered disgorgement of interest recovered on certain loans. *Id*. at A755. In their appeal, appellants challenge only the disgorgement order.

## I.

Appellant LoanPointe, LLC, which is run by appellant Joe S. Strom, does business as GetECash (collectively, the "appellants").[1] *Id*. at A736. GetECash offers relatively small-dollar (under $1,000), unsecured, high-interest loans (commonly known as "payday" loans) through its website, www.GetECash.com. *Id*. During the time periods relevant to this appeal, customers who applied for a GetECash payday loan were required to check a box indicating that they had read, *inter alia*, the Loan Note and Disclosure (the "Disclosure"). *Id*. The Disclosure included the following statement in what the district court described as small bolded print: "NOTICE: I agree to have my wages garnished to pay any

---

[1] Defendant Eastbrook, LLC was merged into LoanPointe prior to the start of the relevant time period and no longer exists as an independent entity. Aplt. App'x at A736.

delinquent amount on this loan." *Id*. Appellants concede that the inclusion of this wage assignment language violated the FTC's Credit Practices Rule, which allows such wage assignment clauses only if "(i) [t]he assignment by its terms is revocable at the will of the debtor, or (ii) [t]he assignment is a payroll deduction plan or preauthorized payment plan, commencing at the time of the transaction, in which the consumer authorizes a series of wage deductions as a method of making each payment, or (iii) [t]he assignment applies only to wages or other earnings already earned at the time of the assignment." 16 C.F.R. § 444.2(a)(3). Assignment clauses that do not meet these requirements are per se unfair under section 5 of the FTC Act. *Id*.

Appellants also included the following language in garnishment letters they sent to employers:

> One of your employees has been identified as owing a delinquent debt to GetECash. The Debt Collection Improvement Act of 1996 (DCIA) permits agencies to garnish the pay of individuals who owe such debt without first obtaining a court order. Enclosed is a Wage Garnishment Assignment directing you to withhold a portion of the employee's pay each period and to forward those amounts to GetECash. We have previously notified the employee that this action was going to take place and have provided the employee with the opportunity to dispute the debt.

Aplt. App'x at A738. This language is similar to that used by the Treasury Department's Financial Management Service when it sends garnishment letters to employers. Aplt. App'x at A737-38. The district court found that the use of such language violated both the FTC Act and the FDCPA because it falsely represented

that appellants were authorized by the DCIA to garnish wages without a court order and that they had afforded borrowers the opportunity to dispute the debt. Appellants do not contest their liability under the FTC Act and the FDCPA for the garnishment letters.

Based on the foregoing conduct, the FTC requested that the court order disgorgement of $2,036,936, which constituted all of the interest recovered on those loans utilizing the improper wage assignment clause. *Id*. at A753. The district court denied that request, finding that the FTC did not establish a causal relationship between that amount and the violations. *Id*. The district court explained that "[d]etermining equitable monetary relief in this case . . . requires the court to balance the need to hold Defendants accountable for deceptive practices with Defendants' right to repayment of the loans." *Id*. at A754. With this goal in mind, the district court limited its consideration to the amounts garnished from employers who received the package of documents which violated the FTC Act and FDCPA. *Id*. at A753-55. The total amount recovered from those employers was $468,020.91. *Id*. The court subtracted the loan principal from that amount and ordered that appellants disgorge the $294,436.31 in interest appellants had recovered through improper garnishment. *Id*. at A755, A779.

## II.

Appellants argue that, because this is an appeal of a summary judgment order, the Court should conduct a de novo review. *See* Appellants' Br. at 14 (citing *Buchanan v. Sherrill*, 51 F.3d 227, 229 (10th Cir. 1995)). Appellants, however, have not appealed the district court's rulings regarding their liability. Rather, their appeal is limited to whether the district court had a sufficient basis for disgorging the interest appellants received on those loans that were repaid through garnishment. *See id.* at 2.

In order to determine whether we review the district court's disgorgement order de novo or for abuse of discretion, it is necessary to examine the nature of the remedy of disgorgement. "[D]isgorgement is a distinctly public-regarding remedy, available only to government entities seeking to enforce explicit statutory provisions." *FTC v. Bronson Partners, LLC*, 654 F.3d 359, 372 (2d Cir. 2011). Disgorgement is remedial rather than punitive, *SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978), intended to "correct, remove, or lessen a wrong, fault, or defect." BLACK'S LAW DICTIONARY 1319 (8th ed. 2004). Its primary purpose "is to deter violations of the [ ] laws by depriving violators of their ill-gotten gains." *Bronson Partners*, 654 F.3d at 373 (citing *SEC v. Fischbach Corp.*, 133 F.3d 170, 175 (2d Cir. 1997)); *see also FTC v. Gem Merch. Corp.*, 87 F.3d 466, 470 (11th Cir. 1996) (the purpose of disgorgement "is not to compensate the victims of fraud, but to deprive the wrongdoer of his ill-gotten gain"). In keeping with this

-5-

purpose, government agencies are not required to return disgorged profits to the victims of a scheme, nor are victims' losses necessarily the best measure of the amount that should be disgorged. *Bronson Partners*, 654 F.3d at 373 (noting that, in many cases, "the nature of the harm is so diffuse that the specific identities of the victims would be nearly impossible to ascertain and the quantum of their individual entitlements too minimal to compute"); *see also FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 67 (2d Cir. 2006) (disgorgement is measured by the defendant's gain as opposed to the consumer's loss).

Although the FTC Act "does not expressly authorize a court to grant consumer redress (i.e., refund, restitution, rescission, or other equitable monetary relief), § 13(b)'s grant of authority to provide injunctive relief carries with it the full range of equitable remedies," *FTC v. Freecom Communications, Inc.*, 401 F.3d 1192, 1202 n.6 (10th Cir. 2005), including disgorgement of profits. *Gem Merch. Corp.*, 87 F.3d at 468; *see also CFTC v. Wilshire Inv. Mgmt. Corp.*, 531 F.3d 1339, 1344 (11th Cir. 2008) (the FTC Act's "grant of authority to issue an injunction carried the full range of equitable remedies, among which 'is the power to grant restitution and disgorgement.'") (internal citations omitted). "An order for disgorgement may be considered an equitable adjunct to an injunction decree." *Bronson Partners*, 654 F.3d at 365 (quoting *Porter v. Warner Holding Co.*, 328 U.S. 395, 399 (1946)); *see also Freecom Communications*, 401 F.3d at 1203 n.6 ("In cases where the FTC seeks injunctive relief, courts deem any monetary relief

sought as incidental to injunctive relief."). In other words, a district court's authority to award disgorgement under § 13(b) falls within its general equitable jurisdiction to "decide all relevant matters in dispute and to award complete relief." *Porter*, 328 U.S. at 399. The same standard of review thus applies to the appeal of an order granting injunctive relief as to the appeal of an order awarding equitable monetary relief.

As we have previously explained, "[w]e review the decision to grant a permanent injunction for abuse of discretion." *FTC v. Accusearch Inc.*, 570 F.3d 1187, 1201 (10th Cir. 2009); *see also FTC v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009) ("We review the district court's grant of equitable monetary relief [in the amount of consumers' loss] for an abuse of discretion."); *FTC v. Febre*, 128 F.3d 530, 534 (7th Cir. 1997) ("We review only the narrow issue of whether the actual amount of damages awarded by the district court, $16,096,345, was calculated properly. We review a district court's grant of equitable relief for abuse of discretion."). As a result, we reject appellants' request that we conduct a de novo review and instead review appellants' challenge to the disgorgement award for abuse of discretion.

"A district court abuses its discretion where it commits a legal error or relies on clearly erroneous factual findings, or where there is no rational basis in the evidence for its ruling." *Clark v. State Farm Mut. Auto. Ins. Co.*, 433 F.3d 703, 709 (10th Cir. 2005) (quotations omitted). The district court's discretion in

granting injunctive relief is "necessarily broad and a strong showing of abuse must be made to reverse it." *Accusearch*, 570 F.3d at 1201 (quotations omitted).

### III.

Appellants challenge the disgorgement order on the grounds that the profits they earned in the form of interest collected by means of the unlawful garnishment letters were not "ill gotten." Appellants' Br. at 2. In support of this contention, they argue, first, that a violation of the Credit Practices Rule on its own is not sufficient to support a disgorgement award; second, that the district court erred in not requiring the FTC to offer evidence that borrowers were actually deceived by appellants' statements or otherwise objected to having their wages garnished without a court order; and third, that appellants were legitimately owed all the money they collected and thus have neither caused any damage nor reaped any undue benefit. *Id*. None of these arguments supports the conclusion that the district court abused its discretion.

First, appellants claim that a violation of the Credit Practices Rule alone cannot support the disgorgement award. *See* Appellants' Br. at 2 (Statement of the Issues on Appeal); *id.* at 9-10; *see also* 16 C.F.R. § 444.2. The district court, however, imposed disgorgement under the FTC Act and the FDCPA, as well as the Credit Practices Rule. Aplt. App'x at A823 ("Defendants are required to disgorge . . . profits from violations of Section 5 of the FTC Act, the FDCPA, and the Credit Practices Rule").

Section 5 of the FTC Act prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45. Under the FTC Act, a practice is deceptive if it entails a material misrepresentation or omission that is likely to mislead consumers acting reasonably under the circumstances. *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir. 1994). A practice is unfair if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n). The district court found that the false statements in the wage garnishment letters were deceptive under the FTC Act because they "made the employers more likely to garnish the wages of their employees." Aplt. App'x at A743. The district court also found that disclosing debts to employers without the borrowers' consent was an unfair practice under the FTC Act because it could cause significant, unavoidable harm to borrowers. *Id*. at 744-45.

In addition to violating the FTC Act, the district court held that the wage garnishment letters violated the FDCPA, which bars debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The FDCPA also prohibits communicating with a third party regarding a debt without the prior consent of the borrower unless the communication is necessary to effectuate a post-judgment

judicial remedy. *Id.* at § 1692c(b). Appellants do not dispute the district court's

finding that they violated the FDCPA. *See* Appellants' Br. at 2.

Second, appellants argue that the district court's disgorgement order is

improper due to the lack of evidence that any borrowers were actually misled by

the violations. As mentioned above, the district court concluded that the

garnishment letters likely deceived the *employers* who received them. Aplt.

App'x at A742. Appellants have not sought to challenge the district court's

conclusion that it was the employers, not the borrowers, who were likely misled.[2]

Further, appellants seem to misconstrue the standard for liability under § 5

of the FTC Act. *See, e.g.*, Appellants' Reply Br. at 3-4, 7. The FTC does not

need to prove actual deception, only the likelihood that a consumer (here,

---

[2] Employers can be "consumers" under the "deceptive" prong of § 5 of the FTC Act. Communications made in the effort to collect a debt–for example, skip tracing forms seeking current information about a debtor's location or employment status–may be found deceptive even when they are sent to third parties and not to the debtors themselves. *See, e.g.*, *Floersheim v. FTC*, 411 F.2d 874, 876 (9th Cir. 1969) (finding deceptive a certain variety of skip tracing form, which is "sent to a person other than the debtor, [and] requests 'answers to all questions on the reverse side of this form, pertaining to the subject'"); *Rothschild v. FTC*, 200 F.2d 39, 41 (7th Cir. 1953) (finding that skip tracing forms sent to individuals other than the debtor are deceptive); *Dejay Stores, Inc. v. FTC*, 200 F.2d 865, 867 (2d Cir. 1952) ("But it is not necessary to establish that the person deceived has suffered any pecuniary loss. . . . The Federal Trade Commission's conclusion that it is in the public interest to require that creditors should not use dishonest methods in collecting their debts is within its discretion."). Moreover, it is well established that misleading collection letters sent directly to debtors are deceptive, even though such communications are not advertisements designed to induce a purchase. *See, e.g.*, *FTC v. Check Investors, Inc.*, 502 F.3d 159, 174-75 (3d Cir. 2007) (finding that writers of insufficiently funded checks, who were subject to misleading collection practices, qualified as "consumers" under § 5).

employers), acting reasonably under the circumstances, *would be* deceived. *See, e.g.*, *Kraft, Inc. v. FTC*, 970 F.2d 311, 319 (7th Cir. 1992) ("We hold that the Commission may rely on its own reasoned analysis to determine what claims, including implied ones, are conveyed in a challenged advertisement, so long as those claims are reasonably clear from the face of the advertisement."); *Thiret v. FTC*, 512 F.2d 176, 180 (10th Cir. 1975) ("Evidence of actual deception is not necessarily essential to a finding of unfair and deceptive practices. It is the capacity to deceive which is important."). The district court properly applied this standard in reasoning that the letters were deceptive because an employer would likely be unfamiliar with the law governing debt collection and unable to verify the facts set forth in the letters. Aplt. App'x at A742-43. No further evidentiary basis was required.

Moreover, the district court found that appellants caused harm to borrowers–and violated § 5 of the FTC Act–independent of the deceptive garnishment letters. Aplt. App'x at A744-45. Specifically, the district court held that disclosing employees' debt to their employers without prior approval was an unfair practice under the FTC Act. *Id*. The district court described at some length the "substantial economic and monetary harm" that assignment clauses and wage garnishment letters can cause to employees. *Id*. This harm results, the district court noted, from the negative light in which many employers view wage garnishment notices, as they not only add to the employer's administrative burden

but also suggest that the employee is irresponsible. *Id.* (citing *Am. Fin. Servs. Assoc. v. FTC*, 767 F.2d 957, 974 (D.C. Cir. 1985)). "As a consequence many lose their jobs after wage assignments are filed. Even if the consumer retains the job, promotions, raises, and job assignments may be adversely affected." *Id.* Garnishments are also harmful, the district court observed, because they can further disrupt already unstable personal finances, preventing wage earners from being able to afford necessities or driving them to take improvident emergency measures. *Id.* By focusing exclusively on whether or not borrowers were deceived with respect to appellants' power to garnish their wages, appellants' argument ignores this additional basis for liability under the Act.

Third, appellants argue that the profit earned by means of the deceptive letters was not "ill gotten" because appellants "did not collect any money than [sic] was not owed." Appellants' Br. at 19. This rationale could be used to justify essentially any method of collecting a debt since it ignores the harm that can flow from the act of collection itself.[3] Moreover, following this logic would

---

[3] The FDCPA was expressly designed to curb the harms of abusive debt collection practices. "Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. . . . It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors . . . ." 15 U.S.C. § 1692(a), (e); *see also Floersheim v. FTC*, 411 F.2d 874, 878 (9th Cir. 1969) ("Petitioner contends there is no deception because deception requires injury, and here there is no injury because all the debtors owe the money. There is no merit in this contention. Deception itself is the evil the statute is designed to prevent.").

deprive consumers of the specific protections accorded them under federal law.

The district court deliberately fashioned a remedy that serves the two purposes of disgorgement, stripping the wrongdoer of ill-gotten gains and deterring improper conduct, without penalizing appellants.[4] *Cf. United States v. Nacchio*, 573 F.3d 1062, 1079-80 (10th Cir. 2009). The district court ordered a limited award that targets only those proceeds which, based on the best information available to the district court, had a strong causal connection to the relevant violations.[5] *Id.* at 1080 (stating that the court need only reach a "reasonable approximation" of illegal profits) (citation and quotation omitted); *FTC v. QT, Inc.*, 512 F.3d 858, 864 (7th Cir. 2008) ("A court is entitled to proceed with the best available information[]"). By rejecting the FTC's request to

---

[4] It is worth noting that the district court found that appellants collected $3,013,044 on loans containing the improper wage assignment clause, $2,036,936 (or 67%) of which constituted interest. The district court's ruling required appellants to disgorge only 14.5% of all the interest recovered on loans containing the wage assignment clause. Appellants expend a significant portion of their briefing analyzing whether anyone whose wages were garnished was actually deceived by the Disclosure, but fail to address whether any borrowers who paid off their loans *before* garnishment might have done so in order to avoid garnishment letters being sent to their employers, under the mistaken belief that such wage assignment was irrevocable. In light of this possibility, measuring the disgorgement award against the total interest recovered on all loans that violated the Credit Practices Rule demonstrates that this award is the product of a reasoned exercise of the district court's equitable powers.

[5] "[R]equiring Defendants to disgorge the interest they received through garnishment fulfills one of the purposes of disgorgement, which is to make violations unprofitable. . . . This disgorgement also serves to equalize the marketplace. Defendants' violations should not allow them to profit more than other similar businesses who have complied with the law." Aplt. App'x at A755.

award the interest earned from all borrowers whose loans contained the improper wage assignment clause, the district court arguably rejected the very position appellants attack on appeal. The district court thus tempered its mandate to discourage unfair trade practices with its recognition that appellants recovered only contractually determined sums. *See* Aplt. App'x at A754. In so doing, the district court did not abuse its discretion. *See SEC v. Maxxon, Inc.*, 465 F.3d 1174, 1179 (10th Cir. 2006) ("'Disgorgement is by nature an equitable remedy as to which a trial court is vested with broad discretionary powers.'") (citation omitted); *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474-75 (2d Cir. 1996) ("The district court has broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged.").

**IV.**

There is no reason to conclude that, in light of appellants' violations, the district court had "no rational basis in the evidence" to order disgorgement of the interest received on garnished amounts. Therefore, the order of the district court is AFFIRMED.

ENTERED FOR THE COURT

Philip A. Brimmer
United States District Judge