[No. G046778. Fourth Dist., Div. Three. Mar. 14, 2013.]

LAW OFFICES OF MATHEW HIGBEE, Plaintiff and Appellant, v.
EXPUNGEMENT ASSISTANCE SERVICES, Defendant and Respondent.

546

 
 

COUNSEL

Law Offices of Mathew Higbee and Mathew K. Higbee for Plaintiff and Appellant.

Carothers DiSante & Freudenberger, Jeffrey L. Sikkema and David G. Hagopian for Defendant and Respondent.

OPINION

**MOORE, J.**—California's unfair competition law (Bus. & Prof. Code, § 17200 et seq.)[1] (UCL) has been crafted to preclude the shakedown lawsuit—the "I get rich" lawsuit brought by a person who has had no business dealings with the proprietor being sued, but who has happened to notice that the hapless proprietor is out of compliance with a particular law. (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 228–229 [46 Cal.Rptr.3d 57, 138 P.3d 207].) The question before us is whether, in endeavoring to protect "mom and pop" operators from the devastation wreaked by gold-digging plaintiffs, the UCL has been so narrowed as to preclude one business competitor from maintaining a UCL lawsuit against another with whom he or she has had no direct business dealings, where the defendant competitor's unlawful business practices have caused injury and monetary or property loss to the plaintiff competitor.

██ Bearing in mind that the UCL was originally conceived to protect business competitors (*People ex rel. Mosk v. National Research Co. of Cal.* (1962) 201 Cal.App.2d 765, 770 [20 Cal.Rptr. 516]), and also that the deterrence of unfair competition is an important goal of the UCL (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1147–1148 [131 Cal.Rptr.2d 29, 63 P.3d 937]), we conclude that the lack of direct dealings between two business competitors is not necessarily fatal to UCL standing, provided the plaintiff competitor has suffered injury in fact and lost money or property as a result of the defendant competitor's unfair competition. (§ 17204.)

[1] All subsequent statutory references are to the Business and Professions Code unless otherwise specifically stated.

Here, the Law Offices of Mathew Higbee (Higbee) filed a lawsuit against online legal services provider Expungement Assistance Services (EAS) for, inter alia, unfair competition based on the unauthorized practice of law. EAS purportedly undercut the competition by using unlicensed persons to perform legal work, thereby saving on attorney fees, and by employing unbonded and unregistered legal document assistants, thereby saving on the costs of posting statutorily mandated bonds and paying registration fees. The court sustained EAS's demurrer without leave to amend, holding that Higbee's allegations of lost revenue, lost market share, diminution in law firm value, and increased advertising costs were insufficient to establish injury in fact for the purposes of UCL standing. Higbee claims error, arguing that he sufficiently alleged the quantum of injury necessary to establish injury in fact. We hold that Higbee alleged an identifiable trifle of injury sufficient to withstand a demurrer. (See *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 324–325 [120 Cal.Rptr.3d 741, 246 P.3d 877].) We reverse and remand.

I

FACTS

Higbee filed a first amended complaint against EAS, asserting causes of action for unfair competition, interference with economic advantage, trade libel, and defamation. EAS filed a motion for judgment on the pleadings with respect to the first cause of action. The court granted the motion, with leave to amend.

The court held that Higbee failed to allege that he had suffered actual injury. In addition, the court stated: "It is not alleged that plaintiff had a transaction with defendant in which it lost money or property or that it was deprived of money or property to which it had a cognizable claim. Plaintiff only alleges that defendant is getting some business that plaintiff might possibly obtain for itself. This is insufficient. One may not sue a competitor under [section] 17200 because that competitor is obtaining some market share." The court gave Higbee an opportunity to file a second amended complaint.

In his second amended complaint, Higbee reasserted the first four causes of action and added a fifth "cause of action" for injunctive relief. EAS then filed a demurrer, challenging the first and fifth causes of action. With respect to the first cause of action, EAS argued that Higbee lacked standing to assert a claim for violation of section 17200. With respect to the fifth cause of action, EAS argued, inter alia, that injunctive relief is a remedy, not a cause of action.

The court sustained the demurrer with respect to the first and fifth causes of action, without leave to amend. The parties thereafter informed the court

that they had settled the remaining causes of action—the second, third and fourth. They requested a dismissal with prejudice of those causes of action. The court then dismissed the lawsuit and Higbee filed a notice of appeal.

On appeal, Higbee challenges the order sustaining the demurrer only with respect to the first cause of action for unfair competition. He concedes that injunctive relief is a remedy, not a cause of action, and so does not challenge the order with respect to the fifth "cause of action."

## II

## DISCUSSION

### A. *Procedural Matters*

#### (1) *Motion to take documentary evidence on appeal and application to file motion under seal*

On November 15, 2012, EAS filed a motion to take documentary evidence on appeal and an application to file that motion under seal. EAS represented that Higbee was arguing on appeal issues that were settled already. However, the settlement agreement was not part of the record on appeal inasmuch as the parties had not provided a copy to the trial court when they notified that court of the settlement. Consequently, EAS contended that the only way for this court to know whether Higbee was arguing about matters that already had been settled was to provide this court with a copy of the settlement agreement.

The settlement agreement contains a confidentiality clause, however. It requires the terms of the settlement agreement, but not the fact of the settlement agreement, to remain confidential. This notwithstanding, the confidentiality clause permits the terms of the settlement agreement to be disclosed "in any action or proceeding where the existence or terms of the [settlement agreement] are at issue . . . ."

EAS requested that the motion to take documentary evidence on appeal, and the copy of the settlement agreement attached thereto, be filed under seal. EAS filed a redacted copy of the motion for public viewing. Higbee did not file any objection, either to the motion itself or to the application to seal the motion.

This court issued an order granting the motion to take documentary evidence on appeal (Cal. Rules of Court, rule 8.252(c)) and granting the

application to seal the unredacted motion and attachments thereto. (Cal. Rules of Court, rules 2.550(d)–(e), 8.46(e).)

### (2) Scope of issues on appeal

Paragraph 4.1 of the settlement agreement provides that Higbee releases EAS from all claims arising in connection with the lawsuit "except that [Higbee] does not release EAS from the First Cause of Action . . . of the Second Amended Complaint to the extent that [it relates] to the contention that EAS is engaged in the unauthorized practice of law." So, this appeal concerns only the sustaining of the demurrer without leave to amend as to the first cause of action, to the extent it is based on the unauthorized practice of law.

## B. Analysis

### (1) Second amended complaint

In his second amended complaint, Higbee alleged his business was a corporation that was engaged in the practice of law in California and offered legal services for record expungements. In conducting his business, Higbee utilized the services of contract attorneys and a Web site hosting provider. Higbee further alleged that EAS was a Delaware corporation with its principal place of business in Kentucky and was neither a law firm nor an entity authorized to practice law in California or any other state. He also alleged that EAS was engaged in the unauthorized practice of law in California, in contravention of Business and Professions Code sections 6125 et seq. and 6400 et seq. and Penal Code section 4852.2, and was conducting business in California without authorization, in violation of Corporations Code section 2105. In addition, Higbee alleged that the conduct of EAS constituted a violation of the UCL.

More specifically, Higbee asserted that EAS maintained a number of different Web sites, such as www.clearmyrecord.com, on which it purported to inform prospective customers about the legal remedies available to them, describe the rights and privileges afforded by those remedies, tell prospective customers what legal documents were necessary to achieve their goals, and represent that its lawyers would prepare or review a customer's court filings and offer legal advice. Higbee alleged that the actions of EAS not only had harmed members of the general public, but also had usurped the opportunities of Higbee, who competes directly with EAS for the same customers, and had resulted in lost revenue.

Higbee sought an injunction restraining EAS from (1) "operating the websites known as www.clearmyrecord.com, [w]ww.removeit.org, . . . shred-my[record].com or any other website that attempts to offer criminal record

clearing services, including expungements, sealing, pardons, clemency, setting asides, vacating criminal records and dismissals"; (2) advising people about legal remedies available to them; and (3) utilizing legal document assistants without complying with sections 6400 through 6415. He also sought damages.

In sustaining the demurrer with respect to the first cause of action, the court stated that Higbee still had not alleged the loss of money or property as a result of EAS's alleged misconduct. It explained that while Higbee alleged he was required to compete for market share, that was not enough to establish standing under the UCL.

### (2) *Standard of review*

"We independently review the ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action. [Citation.] We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters of which judicial notice has been taken. [Citation.] We construe the pleading in a reasonable manner and read the allegations in context. [Citation.] We affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons. [Citation.]" (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 111 [55 Cal.Rptr.3d 621].)

### (3) *Unfair competition law*

#### (a) *Background*

"Historically, the law of unfair competition . . . evolved in the general field of torts. It was concerned primarily with wrongful conduct in commercial enterprises which resulted in business loss to another, ordinarily by the use of unfair means in drawing away customers from a competitor. With passage of time and accompanying epochal changes in industrial and economic conditions, the legal concept of unfair competition broadened appreciably." (*People ex rel. Mosk v. National Research Co. of Cal., supra*, 201 Cal.App.2d at p. 770, fns. omitted.) Eventually, equitable relief was extended "to situations beyond the scope of purely business competition. [Citations.]" (*Ibid.*)

When the Legislature codified the unfair competition laws with the amendment of Civil Code section 3369 in 1933, it "broadened the scope of legal protection against wrongful business practices generally, and in so doing extended to the entire consuming public the protection once afforded only to business competitors." (*Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d

94, 109, 112 [101 Cal.Rptr. 745, 496 P.2d 817]; see *Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 129–130 [96 Cal.Rptr.2d 485, 999 P.2d 718].)

Now, it is well known that the purpose of the UCL " 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.' [Citations.] In service of that purpose, the Legislature framed the UCL's substantive provisions in ' "broad sweeping language" ' [citations] and provided 'courts with broad equitable powers to remedy violations' [citation]." (*Kwikset Corp. v. Superior Court, supra,* 51 Cal.4th at p. 320.)

Ultimately, however, the UCL became overextended in its use. So, " '[i]n 2004, the electorate substantially revised the UCL's standing requirement; where once private suits could be brought by "any person acting for the interests of itself, its members or the general public" (former § 17204, as amended by Stats. 1993, ch. 926, § 2, p. 5198), now private standing is limited to any "person who has suffered injury in fact and has lost money or property" as a result of unfair competition (§ 17204, as amended by Prop. 64, as approved by voters, Gen. Elec. (Nov. 2, 2004) § 3; [citation] . . .).' " (*Kwikset Corp. v. Superior Court, supra,* 51 Cal.4th at pp. 320–321.)

"In Proposition 64, as stated in the measure's preamble, the voters found and declared that the UCL's broad grant of standing had encouraged '[f]rivolous unfair competition lawsuits [that] clog our courts[,] cost taxpayers' and 'threaten[] the survival of small businesses . . . .' [Citation.] The former law, the voters determined, had been 'misused by some private attorneys who' '[f]ile frivolous lawsuits as a means of generating attorney's fees without creating a corresponding public benefit,' '[f]ile lawsuits where no client has been injured in fact,' '[f]ile lawsuits for clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant,' and '[f]ile lawsuits on behalf of the general public without any accountability to the public and without adequate court supervision.' [Citation.] '[T]he intent of California voters in enacting' Proposition 64 was to limit such abuses by 'prohibit[ing] private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact' [citation] and by providing 'that only the California Attorney General and local public officials be authorized to file and prosecute actions on behalf of the general public' [citation]." (*Californians for Disability Rights v. Mervyn's, LLC, supra,* 39 Cal.4th at p. 228.)

The questions in this case center around the reach of the UCL in the commercial context following the enactment of Proposition 64. We turn now to the current statutory provisions.

(b) *Proscribed activities*

██ "The UCL does not proscribe specific activities, but in relevant part broadly prohibits 'any unlawful, unfair or fraudulent business act or practice.' (§ 17200.) ' " 'Because . . . section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent. . . .' " ' [Citation.]" (*Aleksick v. 7-Eleven, Inc.* (2012) 205 Cal.App.4th 1176, 1184 [140 Cal.Rptr.3d 796].) We are concerned here with business acts or practices that may be unlawful, stemming from the unauthorized practice of law.[2]

" ' "By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." ' [Citation.] 'Virtually any law—federal, state or local—can serve as a predicate for a [UCL] action.' [Citation.]" (*Aleksick v. 7-Eleven, Inc., supra,* 205 Cal.App.4th at p. 1185.)

Higbee argues the allegation that EAS violated Business and Professions Code sections 6125 et seq. (pertaining to the requirement of an active law license), 6400 et seq.[3] (pertaining to the registration and bonding of, and permissible activities of, legal document assistants), and Penal Code section 4852.2 (pertaining to the requirement of a law license for the handling of certain criminal matters), constituted an allegation of an unlawful business practice within the meaning of the UCL. He says he is entitled to base a UCL lawsuit on those statutes, citing *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553 [71 Cal.Rptr.2d 731, 950 P.2d 1086] (superseded in part by Prop. 64, as recognized in *Californians for Disability Rights v. Mervyn's, LLC, supra,* 39 Cal.4th at p. 227).

In that case, the court held that a private, for-profit corporation had standing to maintain a UCL action against a retailer who purportedly violated

---

[2] The rulings at issue on appeal do not address the settlement agreement. Consequently, the scope of the settlement agreement is not before us. For the purposes of this appeal, we address Higbee's unauthorized practice of law claim as a claim based on unlawful activity, within the meaning of the UCL. We express no opinion on whether Higbee's unlawful practice of law claim also could be construed as a claim based on either unfair or fraudulent activity, within the meaning of the UCL.

[3] Section 6402 requires a "legal document assistant," as defined in section 6400, to be registered by the county clerk. Section 6402.1 describes the eligibility requirements for registration. Section 6404 specifies the amount of the registration fee and section 6405 identifies the amount of the bond that must be posted in connection with each application. An individual must post a $25,000 bond and a corporation or partnership employing legal document assistants must post a bond ranging from $25,000 to $100,000, depending on the number of assistants employed. (§ 6405.)

a criminal statute prohibiting the sale of cigarettes to minors. (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc., supra,* 17 Cal.4th at p. 558.) The court stated therein: "The UCL defines 'unfair competition' as '. . . any unlawful, unfair or fraudulent business act or practice . . . .' (§ 17200.) As we recently explained in reviewing the scope and purpose of the unfair competition law and its remedial provisions, '[t]he Legislature intended this "sweeping language" to include " 'anything that can properly be called a business practice and that at the same time is forbidden by law.' " ' [Citation.]" (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc., supra,* 17 Cal.4th at p. 560.)

The court rejected the argument that the plaintiff "should not be permitted to use the UCL to obtain relief, indirectly, for violation of an underlying statute . . . that [the plaintiff was] not authorized to enforce directly." (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc., supra,* 17 Cal.4th at p. 561.) It stated that the plaintiff sought "relief from alleged unfair competition, not to enforce the Penal Code." (*Id.* at p. 566.) The court continued: "As we previously have explained, ' "[i]n essence, an action based on [the UCL] to redress an unlawful business practice 'borrows' violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under section 17200 et seq. and subject to the distinct remedies provided thereunder." ' [Citation.]" (*Id.* at pp. 566–567.)

The foregoing authority notwithstanding, EAS argues that Higbee cannot borrow violations of Business and Professions Code sections 6125 et seq. and 6400 et seq. and Penal Code section 4852.2 and treat them as unlawful business practices under the UCL. It contends that Higbee has no standing to pursue a UCL claim based on the unauthorized practice of law, because he has no legally cognizable right or interest to support such a claim—that is, Higbee has no right or interest under the unauthorized practice of law statutes. EAS, citing *Gerhard v. Stephens* (1968) 68 Cal.2d 864 [69 Cal.Rptr. 612, 442 P.2d 692] and *Russell v. Dopp* (1995) 36 Cal.App.4th 765 [42 Cal.Rptr.2d 768], maintains that the purpose of the proscriptions against the unlicensed practice of law is not to protect lawyers from competition, but rather is to protect the public from representation by persons unqualified to practice law and to protect the integrity of the judicial process. True, but neither of those cases arose under, or limits the application of, the UCL.

As we have noted, " '[b]y "borrowing" violations of other laws, the UCL deems those violations "unfair competition" independently actionable under the UCL. [Citation.] "Virtually any law—federal, state or local—can serve as a predicate for a section 17200 action. [Citation.]" [Citation.]' [Citation.]" (*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1335 [90 Cal.Rptr.3d 589].)

Indeed, in *Saunders v. Superior Court* (1994) 27 Cal.App.4th 832 [33 Cal.Rptr.2d 438], for example, the plaintiffs were held to state a UCL cause of action based on the defendants' violation of certain Business and Professions Code provisions. (*Saunders v. Superior Court, supra,* 27 Cal.App.4th at pp. 839–841.) In that case, one group of certified shorthand reporters sued another group of certified shorthand reporters and certain insurance companies for, inter alia, unfair business practices. At issue was the practice of "direct contracting," wherein the defendant reporters contracted with the defendant insurance companies for the exclusive right to report depositions taken by lawyers representing those companies. (*Id.* at p. 837.) The defendant insurance companies required the lawyers they hired to use the services of the defendant reporters. Allegedly, the defendant reporters agreed to review and comment upon both the testimony they took down and the performance of the lawyers, and to help the insurance companies evaluate the need for replacement lawyers. (*Id.* at pp. 838–839.)

Furthermore, the defendant reporters allegedly provided deposition transcripts to the defendant insurance companies at a discount and, without disclosing the pricing arrangement, charged above-market prices to other litigants. (*Saunders v. Superior Court, supra,* 27 Cal.App.4th at p. 840.) The pricing arrangement, the plaintiff reporters alleged, undercut their deposition prices and cost them contracts they might otherwise have been awarded. (*Id.* at p. 841, fn. 4.) The appellate court held that the trial court had erred in sustaining the defendants' demurrers with respect to the UCL claim to the extent based on the violation of sections 8025 and 17045, having to do with impartiality and the secret payment of unearned discounts, respectively.[4] (27 Cal.App.4th at pp. 839–841.) Just as the alleged violations of those Business and Professions Code sections were held to serve as the underpinnings of the UCL action in *Saunders,* we see no reason why the alleged violation of statutes concerning the unauthorized practice of law cannot serve as a predicate for Higbee's UCL action.

### (c) *Actual injury*

Proposition 64 amended section 17204 to provide that no private party has standing to prosecute a UCL action unless he or she "has suffered injury in fact and has lost money or property as a result of the unfair competition." (§ 17204; see *Californians for Disability Rights v. Mervyn's, LLC, supra,* 39 Cal.4th at p. 228.) "To satisfy the narrower standing requirements imposed by Proposition 64, a party must now . . . establish a

---

[4] *Saunders v. Superior Court, supra,* 27 Cal.App.4th at page 841, makes reference to section 17405. However, this is an apparent typographical error. The correct reference is to section 17045.

loss or deprivation of money or property sufficient to qualify as an injury in fact, i.e., *economic injury . . . ." (Kwikset Corp. v. Superior Court, supra*, 51 Cal.4th at p. 322.)

In his second amended complaint, Higbee asserted that, as a result of EAS's unauthorized practice of law, advertisement of illegal services, and representation that it could perform the same legal services as he did, he had been forced, in order to compete, to lower his prices and to expend more money on advertising, he had lost clients and revenue, and the value of his law firm had diminished. EAS maintains the trial court was correct in ruling that Higbee had failed to demonstrate standing, inasmuch as a loss of market share is not the type of economic injury that qualifies as an injury in fact for the purposes of standing under the UCL.

In support of this position, EAS cites *Pom Wonderful LLC v. Coca-Cola Co.* (C.D.Cal. 2010) 727 F.Supp.2d 849 (*Pom I*) and certain unpublished cases pertaining to the same plaintiff. In *Pom I*, the court held that the plaintiff could not maintain a UCL lawsuit based on decreased market share, because it could not state a claim for restitutionary relief. The court stated that a plaintiff has no standing to maintain a UCL claim, even when seeking injunctive relief, unless it is entitled to restitutionary relief. (*Id.* at p. 870.) However, this viewpoint was expressly disapproved by the Supreme Court in *Kwikset Corp. v. Superior Court, supra*, 51 Cal.4th at pages 335 through 337 shortly after the decision in *Pom I* was rendered.

On appeal, the Ninth Circuit in *Pom Wonderful LLC v. Coca-Cola Co.* (9th Cir. 2012) 679 F.3d 1170 (*Pom II*) stated: "The California Supreme Court has now made clear that standing under section 17204 (the UCL standing provision) does not depend on eligibility for restitution. *See Kwikset Corp. v. Superior Ct.*, 51 Cal.4th 310, 120 Cal.Rptr.3d 741, 246 P.3d 877, 895 (2011); *Clayworth v. Pfizer, Inc.*, 49 Cal.4th 758, 111 Cal.Rptr.3d 666, 233 P.3d 1066, 1088 (2010)." (*Pom II, supra*, 679 F.3d at pp. 1178–1179.) The court in *Pom II* left open the question whether, on remand, Pom Wonderful LLC would be able to demonstrate standing under the UCL. (*Pom II, supra*, 679 F.3d at p. 1179.) Given the foregoing, EAS's citation to *Pom I, supra*, 727 F.Supp.2d 849 as supportive of the argument that injury in fact cannot be based on market share is unavailing, if not disingenuous.

In support of his argument that market share injury may indeed suffice to establish standing under the UCL, Higbee cites *Allergan, Inc. v. Athena Cosmetics, Inc.* (Fed.Cir. 2011) 640 F.3d 1377. In that case, the plaintiff manufactured and sold an FDA-approved product that used a prostaglandin compound to treat eyelash growth. The defendants allegedly manufactured and sold unapproved products containing prostaglandin compounds. The

plaintiff filed a complaint for unfair competition under the UCL and for patent infringement. With respect to the UCL cause of action, the plaintiff alleged that the defendants unlawfully sold products containing prostaglandin compounds in violation of federal and state misbranding laws and without approval from either the FDA or California's State Department of Health Care Services. (*Allergan, Inc. v. Athena Cosmetics, Inc., supra,* 640 F.3d at pp. 1378–1379.) With respect to damages, the plaintiff alleged in its complaint that the defendants' acts of unfair competition had caused serious and irreparable injury, including lost sales, revenue and market share and reduced asset value. (*Allergan, Inc. v. Athena Cosmetics, Inc., supra,* 640 F.3d at p. 1379.)

The defendants in *Allergan, Inc. v. Athena Cosmetics, Inc., supra,* 640 F.3d 1377 moved for judgment on the pleadings, arguing the plaintiff lacked standing to maintain its claim under the UCL. (*Allergan, Inc. v. Athena Cosmetics, Inc., supra,* 640 F.3d at p. 1379.) The district court dismissed the plaintiff's UCL claim, because the plaintiff had failed to demonstrate that it was eligible for restitution. (*Id.* at pp. 1379–1380.)

The appellate court observed: "The resolution of this appeal turns on the allegations a party asserting a claim under the UCL must state to satisfy the standing requirements of UCL § 17204." (*Allergan, Inc. v. Athena Cosmetics, Inc., supra,* 640 F.3d at p. 1380.) It observed that under *Kwikset Corp. v. Superior Court, supra,* 51 Cal.4th 310, a plaintiff need not allege that he or she was entitled to restitutionary relief, but need only allege that he or she suffered an injury in fact caused by the defendant. (*Allergan, Inc. v. Athena Cosmetics, Inc., supra,* 640 F.3d at p. 1380.)

The appellate court reversed, stating: "Here, [the plaintiff] has plainly alleged an economic injury that was the result of an unfair business practice. The unfair competition that [the plaintiff] alleges involves the defendants' manufacture, marketing and/or sale of hair and eyelash growth products without a prescription, federal or state approval, and proper labeling in violation of federal and California laws. . . . As a result of these acts, [the plaintiff] alleges that it has 'lost sales, revenue, market share, and asset value.' . . . [The plaintiff's] complaint sufficiently alleges an injury that was caused by the defendants' unfair business practices. Under *Kwikset,* this satisfies the requirements of section 17204, and therefore [the plaintiff] has standing to pursue its claim for relief under the UCL. [Citations.]" (*Allergan, Inc. v. Athena Cosmetics, Inc., supra,* 640 F.3d at pp. 1382–1383, citations omitted.)

Nevertheless, EAS argues that *Allergan, Inc. v. Athena Cosmetics, Inc., supra,* 640 F.3d 1377 is inapposite. It maintains that the plaintiff in that case could demonstrate a legally protected interest in a market share based on patent holdings. However, while the plaintiff in *Allergan* allegedly held applicable patents, the issues on appeal related only to the UCL claim, not to

the patent infringement claims. Furthermore, no part of the court's analysis was based on the plaintiff's patent holdings. In any event, we observe there are other cases in which plaintiffs that did not hold any patents were held to have standing under the UCL based on market injury claims.

In *VP Racing Fuels, Inc. v. General Petroleum Corp.* (E.D.Cal. 2009) 673 F.Supp.2d 1073, the plaintiff, a seller of racing fuel, sought injunctive and monetary relief under several statutes, including the UCL. The plaintiff claimed that the defendant misrepresented the octane rating of racing fuel it distributed in California. The defendant filed a motion to dismiss the complaint for failure to state a claim upon which relief could be granted, based on, inter alia, the failure to plead fraud with particularity. (*VP Racing Fuels, Inc. v. General Petroleum Corp., supra*, 673 F.Supp.2d at pp. 1076–1077.)

In addressing whether the plaintiff had stated its UCL claim with particularity, the court stated: "Plaintiff alleges that Defendant's conduct 'has enabled Defendants to price their 100 Octane product below the true market value of bona fide, 100 Octane fuel.' . . . Plaintiff further alleges that such practice 'has resulted in competitive harm and has unfairly diverted sales to Defendant[].' Therefore, the Court concludes that Plaintiff has sufficiently alleged harm such that Defendant should be made to answer. As such, Plaintiff properly states a cause of action under the 'unfair' prong of the UCL." (*VP Racing Fuels, Inc. v. General Petroleum Corp., supra*, 673 F.Supp.2d at p. 1087, citations omitted.) The court also held that the plaintiff had properly stated a cause of action under the "fraudulent" prong of the UCL. (*VP Racing Fuels, Inc. v. General Petroleum Corp., supra*, 673 F.Supp.2d at p. 1087.) Although it held that the plaintiff had failed to state a cause of action under the "unlawful activity" prong of the UCL, this was only because the plaintiff had failed to show a violation of an underlying statute, not because it had failed to demonstrate injury as required for UCL standing. (*VP Racing Fuels, Inc. v. General Petroleum Corp., supra*, 673 F.Supp.2d at p. 1086.) Clearly, the court determined that an alleged loss of market share, even without a claim of patent infringement, was sufficient to demonstrate injury.

Similarly, allegations of lost market share supported a UCL claim in *Saunders v. Superior Court, supra*, 27 Cal.App.4th 832, as we have discussed. In that case, the plaintiff reporters alleged that the practice of "direct contracting" undercut their deposition prices and cost them contracts they might otherwise have been awarded. (*Id.* at p. 841, fn. 4.)

So, in each of *Allergan, Inc. v. Athena Cosmetics, Inc., supra*, 640 F.3d 1377, *VP Racing Fuels, Inc. v. General Petroleum Corp., supra*, 673 F.Supp.2d 1073, and *Saunders v. Superior Court, supra*, 27 Cal.App.4th 832, the alleged injury was based on reduced market share. Although the plaintiff in *Allergan* held patents, the plaintiffs in the other two cases did not.

Moreover, as we have said, the court's analysis in *Allergan* was not based on patent infringement, that not being at issue on appeal.

Such case law notwithstanding, EAS quotes from *Bower v. AT&T Mobility, LLC* (2011) 196 Cal.App.4th 1545 [127 Cal.Rptr.3d 569], which states that a UCL plaintiff's alleged economic "injury must be ' "an invasion of a legally protected interest which is (a) concrete and particularized, [citations]; and (b) 'actual or imminent, not "conjectural" or "hypothetical," ' [citations]." [Citation.]' [Citations.]" (*Id.* at p. 1554.) EAS maintains that the alleged injury in the matter before us is conjectural or hypothetical, not concrete and particularized. However, *Bower* is distinguishable, as are the other cases EAS cites—*Korea Supply Co. v. Lockheed Martin Corp., supra,* 29 Cal.4th 1134 and *Drum v. San Fernando Valley Bar Assn.* (2010) 182 Cal.App.4th 247 [106 Cal.Rptr.3d 46].

*Bower v. AT&T Mobility, LLC, supra,* 196 Cal.App.4th 1545 was a consumer case, not a business competitor case. In *Bower,* the plaintiff was a customer who had purchased a cellular telephone package from AT&T, including a discounted telephone and a two-year service agreement. She complained that AT&T had misrepresented the fact that it was required to pass on to her the tax on the undiscounted price of the telephone, whereas in fact the passthrough of the tax was discretionary. (*Id.* at pp. 1548, 1550.) She filed a class action alleging that AT&T had " 'denied [her] any opportunity [to] shop around for retailers that [did] not charge consumers this discretionary fee.' " (*Id.* at p. 1551.)

The *Bower* court held that this allegation of injury was insufficient to survive a demurrer. (*Bower v. AT&T Mobility, LLC, supra,* 196 Cal.App.4th at pp. 1552, 1554–1555.) The court stated that the plaintiff had pleaded "at the most a conjectural or hypothetical injury, not an injury in fact." (*Id.* at p. 1555.) It explained that she had not alleged "that she could have obtained a bundled transaction for a new cellular telephone—the telephone that she selected—at a lower price from another source. [Citation.]" (*Ibid.*) In the matter before us, however, Higbee did plead an injury in fact, inasmuch as he alleged that he had lost revenue and asset value and had been forced to spend more money on advertising.

We turn now to *Korea Supply Co. v. Lockheed Martin Corp., supra,* 29 Cal.4th 1134. In that case, the plaintiff was the agent for a manufacturer of military equipment. It represented its client in a bid to obtain a contract which would have generated a $30 million commission. (*Id.* at p. 1141.) However, the contract was awarded to another party, even though the bid the plaintiff had put forward on behalf of its client was lower. The plaintiff alleged that the contract was awarded to a higher bidder because that bidder had offered

bribes and sexual favors to key decision makers. (*Id.* at p. 1140.) The plaintiff filed an unfair competition action seeking disgorgement of the profits realized by the successful bidder. (*Id.* at p. 1142.) However, the court held "that nonrestitutionary disgorgement of profits is not an available remedy in an individual action under the UCL." (*Id.* at p. 1152.)

EAS says *Korea Supply Co. v. Lockheed Martin Corp., supra,* 29 Cal.4th 1134 provides an example of an injury that was particular and concrete. The case is inapposite, however. The plaintiff there was not a competitor. Its client was the competitor. The plaintiff did not allege that it had lost market share. It alleged that it had lost a prospective commission. The issue in the case was not whether the plaintiff had alleged an injury that was concrete and particular. It was whether the monetary relief it sought was available under the UCL. Nothing in *Korea Supply* casts doubt on the viability of Higbee's UCL claim in the matter before us.

That leaves *Drum v. San Fernando Valley Bar Assn., supra,* 182 Cal.App.4th 247. In that case, the plaintiff was a disbarred attorney who desired to purchase a membership list from a local bar association, in order to offer his mediation services to its members. The bar association declined to sell him the membership list, purportedly because he had been disbarred. The plaintiff alleged that the real reason the bar association had declined to sell him the list was that some of its members were mediators and the bar association was protecting them from competition. Claiming this was an unfair business practice, the plaintiff filed a UCL action against the bar association. (*Id.* at p. 251.)

On appeal, the plaintiff in *Drum v. San Fernando Valley Bar Assn., supra,* 182 Cal.App.4th 247 conceded that he had failed to adequately allege damages. Furthermore, as the court noted, the plaintiff "did not allege that he lost or expended or was denied any money or property as the result of the . . . refusal to sell him [the] membership mailing list." (*Id.* at p. 252.) Consequently, the court concluded that he had failed to allege facts demonstrating standing to maintain a UCL action. (*Ibid.*)

In the case before us, in contrast, Higbee alleged that, due to EAS's unlawful competition, he had lost business, the value of his law firm had diminished, and he had been required to expend money in the form of increased advertising costs. Unlike the plaintiff in *Drum v. San Fernando Valley Bar Assn., supra,* 182 Cal.App.4th 247, who sought to acquire a new share of whatever mediation business might be available in the marketplace, Higbee alleged that EAS's unlawful business practices had taken customers away from him.

■ As we have observed, the original purpose of the unfair competition laws was to protect against "wrongful conduct in commercial enterprises which resulted in business loss to another, ordinarily by the use of unfair means in drawing away customers from a competitor." (*People ex rel. Mosk v. National Research Co. of Cal., supra,* 201 Cal.App.2d at p. 770.) Although the UCL was ultimately expanded to provide equitable relief to consumers in addition to business competitors (*People ex rel. Mosk v. National Research Co. of Cal., supra,* 201 Cal.App.2d at p. 770), this does not mean that the UCL no longer protects business competitors (*Kwikset Corp. v. Superior Court, supra,* 51 Cal.4th at p. 320).

As the Supreme Court stated in *Kwikset Corp. v. Superior Court, supra,* 51 Cal.4th 310, the purpose of the UCL " 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.' [Citations.]" (*Kwikset Corp. v. Superior Court, supra,* 51 Cal.4th at p. 320; accord, *Hall v. Time Inc.* (2008) 158 Cal.App.4th 847, 852 [70 Cal.Rptr.3d 466].) Put another way, the UCL "governs 'anti-competitive business practices' as well as injuries to consumers, and has as a major purpose 'the preservation of fair business competition.' [Citations.]" (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 [83 Cal.Rptr.2d 548, 973 P.2d 527].)

■ "There are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary. [Citation.]" (*Kwikset Corp. v. Superior Court, supra,* 51 Cal.4th at p. 323.) The foregoing list is not exhaustive and the notion of "lost money" under the UCL is not limited. (*Kwikset Corp. v. Superior Court, supra,* 51 Cal.4th at p. 323.) ■ Moreover, "the quantum of lost money or property necessary to show standing is only so much as would suffice to establish injury in fact" and "it suffices . . . to ' "allege[] some specific, 'identifiable trifle' of injury." ' [Citations.]" (*Id.* at pp. 324–325, fn. omitted.) " ' "The basic idea . . . is that an identifiable trifle is enough for standing to fight out a question of principle; the trifle is the basis for standing and the principle supplies the motivation." ' [Citation.]" (*Id.* at p. 325, fn. 7.)

In the matter before us, we hold that Higbee, having alleged that he had been forced to pay increased advertising costs and to reduce his prices for services in order to compete, and that he had lost business and the value of his law practice had diminished, succeeded in alleging at least an identifiable trifle of injury as necessary for standing under the UCL.

(d) *Causation*

■ EAS reminds us that injury is not the only requirement for standing under the UCL. In order to satisfy the Proposition 64 standing requirements, a party must establish an economic injury and in addition "show that that economic injury was the result of, i.e., *caused by*, the unfair business practice . . . that is the gravamen of the claim." (*Kwikset Corp. v. Superior Court, supra*, 51 Cal.4th at p. 322.) EAS concedes that "[t]he courts have not yet defined the contours of the causation element under the 'unlawful' prong" of the UCL, citing *Kwikset Corp. v. Superior Court, supra*, 51 Cal.4th at page 326, footnote 9. This notwithstanding, EAS argues that Higbee has not adequately alleged that his purported injury was caused by EAS's conduct. As an offshoot of this argument, EAS asserts that Higbee cannot demonstrate standing to bring a UCL claim because he never engaged in any business dealings with EAS.

In support of this assertion, EAS cites *Clayworth v. Pfizer, Inc., supra*, 49 Cal.4th 758 and *Californians for Disability Rights v. Mervyn's, LLC, supra*, 39 Cal.4th 223. The court in *Clayworth v. Pfizer, Inc., supra*, 49 Cal.4th 758, quoting from *Californians for Disability Rights v. Mervyn's, LLC, supra*, 39 Cal.4th 223, reiterated the history of Proposition 64. The *Clayworth* court added the comment: "While the voters clearly intended to restrict UCL standing, they just as plainly preserved standing for those who *had* had business dealings with a defendant and had lost money or property as a result of the defendant's unfair business practices. [Citations.]" (*Clayworth v. Pfizer, Inc., supra*, 49 Cal.4th at p. 788.) This sentence is the linchpin of EAS's argument. EAS construes it as a pronouncement that in no circumstance may one maintain a UCL cause of action against another without having had business dealings with him or her. However, we do not construe the sentence as having as broad an application as EAS would like.

In *Clayworth v. Pfizer, Inc., supra*, 49 Cal.4th 758, certain retail pharmacies, alleging unlawful price fixing, filed suit against companies that manufactured, marketed, and/or distributed pharmaceutical products. The plaintiffs asserted that they had been forced to pay overcharges they would not have had to pay in a competitive market. (*Id.* at pp. 764–765.) The defendants argued the claims were barred because the plaintiffs had not been injured, inasmuch as they had passed on any overcharges to third parties. (*Id.* at p. 765.) The trial court, in ruling on cross-motions for summary judgment/summary adjudication, concluded that the pass-on defense defeated the UCL claim because the plaintiffs had not lost money or property, as required for UCL standing. (*Id.* at p. 766.) The appellate court affirmed on the basis of lack of standing and ineligibility for relief. (*Id.* at p. 788.)

■ The Supreme Court rejected the defendants' argument that the plaintiffs had suffered no loss because they were able to pass the overcharges on to others. It stated: "[S]ection 17204 requires only that a party have 'lost money or property,' and [the plaintiffs] indisputably lost money when they paid an allegedly illegal overcharge. We decline [the defendants'] invitation to turn this facially simple threshold condition into a requirement that plaintiffs prove compensable loss at the outset." (*Clayworth v. Pfizer, Inc., supra*, 49 Cal.4th at p. 789, fn. omitted.) The court also stated that the plaintiffs could seek injunctive relief, irrespective of whether they could also seek restitution. (*Id.* at pp. 789–790.)

Taken in context, we do not view the language of *Clayworth v. Pfizer, Inc., supra*, 49 Cal.4th 758, regarding the preservation of standing for persons who have done business with a defendant, as a bar to standing in the matter before us. In *Clayworth*, the trial and appellate courts concluded that the plaintiffs had no UCL standing because they had suffered no injury. However, the Supreme Court held that the plaintiffs had indeed alleged injury, in the form of overcharges suffered. There was no argument that the plaintiffs lacked standing because they had not engaged in business dealings with the defendants. Consequently, the question of whether a plaintiff who has not had business dealings with a defendant is precluded from maintaining a UCL lawsuit against him was not put before the court.

To be sure, the Supreme Court in *Clayworth v. Pfizer, Inc., supra*, 49 Cal.4th 758 observed that the intent of Proposition 64 was to restrict UCL standing. (*Id.* at p. 788.) However, in commenting that the voters had "plainly preserved standing for those who *had* had business dealings with a defendant" (*ibid.*), we do not believe the court intended to engraft upon section 17204 a requirement that all plaintiffs must, in every event, have engaged in business dealings with a defendant in order to demonstrate UCL standing.

■ As the Supreme Court in *Clayworth* stated, in statutory construction, "[w]e begin with the language of the statute. If the text is sufficiently clear to offer conclusive evidence of the statute's meaning, we need look no further. [Citation.]" (*Clayworth v. Pfizer, Inc., supra*, 49 Cal.4th at p. 770.) ■ Section 17204 permits a UCL lawsuit to be prosecuted by the Attorney General or certain other public officers, "or by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." (§ 17204.) The language is clear on its face and contains no requirement that the plaintiff must have engaged in business dealings with the defendant.

Although EAS contends that the case law after Proposition 64 makes clear that a plaintiff must have had business dealings with the defendant in order to

have standing under the UCL, we disagree. As we have already discussed, neither *Allergan, Inc. v. Athena Cosmetics, Inc., supra,* 640 F.3d 1377, nor *VP Racing Fuels, Inc. v. General Petroleum Corp., supra,* 673 F.Supp.2d 1073, engrafted a business dealings requirement onto the UCL standing requirements.

If Higbee had engaged in business dealings with EAS, the alleged causation likely would have been plain. But that does not mean that it is impossible to allege facts sufficient to support causation in the absence of direct business dealings. Here, as we have discussed, Higbee alleges that he suffered losses in revenue and asset value and was required to pay increased advertising costs specifically because of the unlawful business practices of EAS. Mindful of the procedural posture of this case, we are unwilling to say that this allegation of causation is insufficient to withstand a demurrer. (See *VP Racing Fuels, Inc. v. General Petroleum Corp., supra,* 673 F.Supp.2d 1073; *Saunders v. Superior Court, supra,* 27 Cal.App.4th 832.) EAS's citations to cases pertaining to the requirement to allege reliance in order to show causation in cases based on fraud (see, e.g., *In re Tobacco II Cases* (2009) 46 Cal.4th 298 [93 Cal.Rptr.3d 559, 207 P.3d 20]; *Pfizer Inc. v. Superior Court* (2010) 182 Cal.App.4th 622 [105 Cal.Rptr.3d 795]) do not convince us otherwise.

(e) *Conclusion*

 Section 17203 specifically authorizes the use of injunctive relief to prevent unfair competition. This statute "suggests that the Legislature considered deterrence of unfair practices to be an important goal . . . ." (*Korea Supply Co. v. Lockheed Martin Corp., supra,* 29 Cal.4th at p. 1148.)

The Legislature worded the UCL so as " 'to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur. Indeed, . . . [it] was intentionally framed in its broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable " 'new schemes which the fertility of man's invention would contrive.' " [Citation.] As [has been] observed: "When a scheme is evolved which on its face violates the fundamental rules of honesty and fair dealing, a court of equity is not impotent to frustrate its consummation because the scheme is an original one. . . ." [Citations.] With respect to "unlawful" or "unfair" business practices, [former Civil Code] section 3369 [(today Bus. & Prof. Code, § 17200)] specifically grants our courts that power. . . .' [Citation.]" (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra,* 20 Cal.4th at p. 181.) The language of the UCL does not leave the court hamstrung, unable to even consider an action seeking injunctive relief just because the defendant engages in its purportedly unlawful activity via the

Internet and has not had any direct business dealings with the plaintiff. The allegations before us do at least suffice to survive a demurrer.

We emphasize that our opinion is strictly limited to the context of business competitors. We state only that a business competitor who adequately alleges that he or she has suffered injury in fact and lost money or property as a result of the defendant's unfair competition is not necessarily precluded from maintaining a UCL lawsuit against the defendant just because he or she has not engaged in direct business dealings with the defendant. Nothing in this opinion is meant to suggest that we approve of the revival of shakedown lawsuits or that a consumer who has never done business with a company has standing to maintain a UCL action against it.

### III

### DISPOSITION

The judgment is reversed and the matter is remanded to the trial court. Higbee shall recover his costs on appeal. The clerk of this court is directed to send a copy of this opinion to the Attorney General.

O'Leary, P. J., and Fybel, J., concurred.