NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 18 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ROBERT OZERAN, an individual, | No. 18-55675 |
| Plaintiff-Appellant, | D.C. No. 2:17-cv-07965-DOC-JDE |
| v. | |
| ROBIN JACOBS, an individual, DBA The Law Offices of Robin Jacobs, Inc., a California Company; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Submitted November 15, 2019**
Pasadena, California

Before:  M. SMITH, MILLER, and COLLINS, Circuit Judges.

Robert Ozeran appeals the district court's decision dismissing with prejudice

his claims under the Racketeer Influenced and Corrupt Organizations Act

("RICO") and California's Unfair Competition Law ("UCL") and dismissing

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The panel unanimously concludes that this case is suitable for decision without oral argument.  *See* FED. R. APP. P. 34(a)(2)(C).

without prejudice his common-law negligence claim. "'We review de novo the district court's grant of a motion to dismiss under Rule 12(b)(6), accepting all factual allegations in the complaint as true and construing them in the light most favorable to the nonmoving party.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 962 (9th Cir. 2016). We affirm.

1. Ozeran's RICO claim was based on the theory that, as a workers' compensation attorney competing in the same geographic market as the attorney Defendants, he was injured by Defendants' operation of an unlawful referral scheme under which they would pay "cappers" a monthly fee in exchange for the referral of "an agreed upon minimum number of retained clients per month." This scheme, according to Ozeran, constituted an enterprise that, together with other related enterprises, was operated by Defendants through a pattern of mail and wire fraud. We conclude that the district court properly dismissed this claim on the ground that, as a matter of law, Ozeran could not satisfy the proximate causation standards for civil RICO claims.

In order to establish proximate causation, a civil RICO plaintiff must plead and prove that there is "'some *direct* relation between the injury asserted and the injurious conduct alleged.'" *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006) (emphasis added). In *Anza*, the Supreme Court addressed a comparable RICO theory under which the plaintiff steel-supply company alleged that its

2

principal competitor obtained increased market share by failing to collect state sales tax on cash transactions (thereby unfairly lowering its effective prices) and then submitting false tax returns to the state. *Id*. at 454. The Court held that, as a matter of law, this claim was too indirect to establish proximate causation. *Id*. at 456–61. As the Court explained, the *state* was the direct victim of the predicate acts of mail and wire fraud, and the plaintiff competitor was injured only *indirectly* by virtue of the collateral impact of the defendants' sales-tax cheating on the steel-supply market. *Id*. at 460–61. The fact that the defendant carried out the scheme in order to injure the plaintiff did not cure the lack of a direct connection between the alleged RICO violation and the plaintiff's injuries: "A RICO plaintiff cannot circumvent the proximate-cause requirement simply by claiming that the defendant's aim was to increase market share at a competitor's expense." *Id*. at 460.

Ozeran's RICO claim fails as a matter of law under *Anza*. Ozeran does not, and could not, contend that he was the *direct* victim of the alleged predicate acts of mail and wire fraud on which his RICO claim is based; rather, the direct victims of those fraudulent acts were the recruited clients and the insurance companies from whom the capping scheme was hidden. Like the plaintiff in *Anza*, Ozeran cannot avoid his inability to allege proximate causation by alleging that Defendants' "aim was to increase market share at a competitor's expense." *Anza*, 547 U.S. at 460.

3

2.  The district court correctly dismissed Ozeran's UCL claim with prejudice on the ground that no relief could be granted to Ozeran under that statute as a matter of law.

The only remedies available to a private plaintiff under California's UCL are the equitable remedies of injunction and restitution.  CAL. BUS. & PROF. CODE § 17203; *Zhang v. Superior Court*, 304 P.3d 163, 167–68 (Cal. 2013).  Here, Ozeran did not request injunctive relief, and so the only question is whether he stated a claim for restitution under the UCL.  The monetary remedies sought in Ozeran's operative complaint were "disgorgement of all the illegally obtained proceeds," "general and compensatory damages," "treble actual damages under RICO," and punitive damages.  Neither compensatory nor punitive damages are available under the UCL, *see Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 946 (Cal. 2003), and disgorgement is permitted only if it is "restitutionary," *id*. at 947.  To qualify as "restitutionary," the proceeds Ozeran sought to have disgorged must be "money . . . that was once in [his] possession" or money in which he "has an ownership interest" or "vested interest."  *Id*.  But the "proceeds" Defendants obtained here came from their clients, not from Ozeran, and Ozeran has no "ownership" or "vested" interest in such funds.  Ozeran's allegation that he experienced a "drop in clients that otherwise would have been represented by [him] absent Defendants' misconduct" constitutes the sort of "contingent

4

expectancy of payment" that is not recoverable under the UCL as a matter of law. *Id.* at 948.

Ozeran's reliance on *Law Offices of Mathew Higbee v. Expungement Assistance Servs.*, 153 Cal. Rptr. 3d 865 (Cal. Ct. App. 2013), is unavailing. The only issue in that appeal was whether the plaintiff met the UCL *standing* requirements set forth in Business and Professions Code section 17204, *see id.* at 878–79, and "the standards for establishing standing under section 17204 and eligibility for restitution under section 17203 are wholly distinct," *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 894 (Cal. 2011) (citation omitted). Although Ozeran had statutory standing to bring this UCL suit, he is not entitled to restitution under the UCL as a matter of law. Because Ozeran does not argue in this appeal that he is entitled to any other form of relief, the district court properly dismissed the UCL claim with prejudice.

3. The district court did not err in dismissing Ozeran's negligence claim without prejudice and remanding that claim for repleading in state court.[1]

To establish a negligence claim, the plaintiff must allege (*inter alia*) that the defendant owed a duty of care to the plaintiff, but under California law, the "general rule" is that there is no duty of care to avoid causing "purely economic

---

[1] Certain Appellees have filed a motion to take judicial notice of documents related to the proceedings that occurred in the state court after remand, but in view of our disposition of this case, we deny that motion as moot.

losses" to third parties. *Southern Cal. Gas Leak Cases*, 441 P.3d 881, 886–87 (Cal. 2019). California courts have recognized an exception to that general rule based on a consideration of the six-factor duty test set forth in *Biakanja v. Irving*, 320 P.2d 16, 19 (Cal. 1958). *See Southern Cal. Gas Leak Cases*, 441 P.3d at 887; *see also Centinela Freeman Emergency Med. Assocs. v. Health Net of Cal., Inc.*, 382 P.3d 1116, 1128–31 (Cal. 2016) (applying the *Biakanja* factors). But Ozeran does not rest his negligence claim on any such *Biakanja* theory. Instead, he asserts that the *statutory* prohibitions against capping and improper solicitation gave rise to a duty of care towards other attorneys (such as Ozeran). *See, e.g.*, CAL. BUS. & PROF. CODE § 6152; CAL. INS. CODE § 750. The district court generously construed Ozeran's complaint as asserting a claim for negligence per se, and the court then correctly dismissed that claim as inadequately pleaded.

To succeed under a theory of negligence per se, a plaintiff must show, *inter alia*, that he or she is a member "of the class of persons for whose protection the [allegedly violated] statute, ordinance, or regulation was adopted." CAL. EVID. CODE § 669(a)(4); *see also Elsner v. Uveges*, 102 P.3d 915, 927 (Cal. 2004) (§ 669 "codifies the common law doctrine of negligence per se, pursuant to which statutes and regulations may be used to establish duties and standards of care in negligence actions"); *Resolution Trust Corp. v. Rossmoor Corp.*, 40 Cal. Rptr. 2d 328, 335 (Cal. Ct. App. 1995) ("statute or regulation creates duty only as [to] those it was

6

intended to protect") (citing *Haft v. Lone Palm Hotel*, 478 P.2d 465, 468 (Cal. 1970)).  The anti-capping and anti-solicitation statutes invoked by Ozeran focus on the improper recruitment of *clients* and on the use of improper schemes in the presentation of "claims under policies of insurance" to *insurers*.  CAL. INS. CODE § 750; *see also*, *e.g.*, CAL. BUS. & PROF. CODE § 6152.  Even if such statutes can also be said to rest on the broader interest in avoiding "debasing the legal profession," *cf. Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 461 (1978), the persons that these statutes aim to protect from such debasement are the directly affected clients or insurers.  To the extent that Ozeran contends that a duty should extend beyond the direct victims of these practices to others that suffer economic effects from such conduct, any such broader argument would have to be evaluated under *Biakanja*, but no such *Biakanja*-based duty has been asserted here.  The district court did not err in dismissing this claim without prejudice.[2]

The judgment of the district court is **AFFIRMED.**

---

[2] Because we conclude that Ozeran did not adequately allege a duty, we do not address the further issue of whether, if he *had* alleged such a duty owed *to him*, a breach of such a duty could be said to have proximately caused his alleged injuries.